UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS R. MCPEEK,<br><br>Plaintiff,<br><br>vs.<br><br>AARON HAYNES, South Dakota Dept. of Corrections Medical Director, in his individual and official capacity; and ELIZABETH PAUL, Medical Provider at Mike Durfee State Prison, in her individual and official capacity,<br><br>Defendants. | 4:24-CV-04056-ECS<br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Travis R. McPeek, an inmate at Mike Durfee State Prison (MDSP), filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. McPeek alleges that the Defendants were deliberately indifferent to his serious medical needs because they refused to administer pain medication prescribed by an outside provider following an umbilical surgical repair. Id. ¶ 11. The parties have filed cross motions for summary judgment. Docs. 42, 45.

## I. Factual Background

At all relevant times, the Plaintiff, Travis R. McPeek, has been an inmate at MDSP in the custody of the South Dakota Department of Corrections. Doc. 1 ¶ 3. Defendant Aaron Haynes, M.D., is the Chief Medical Officer for the South Dakota Department of Corrections ("DOC"). Doc. 47 ¶ 1; Doc. 62 ¶ 1. Dr. Haynes is based in Pierre, South Dakota, and his duties include reviewing policies, utilization review, developing new medical programs, and provider support. Id. Defendant Elizabeth Paul is certified nurse practitioner ("CNP") employed by the DOC.

Doc. 47 ¶ 3; Doc. 62 ¶ 3. CNP Paul works at MDSP, and her duties are to assess, diagnose, and treat patients for acute and chronic conditions. Id.

On October 12, 2023, McPeek was transferred from MDSP in Springfield, South Dakota, to Yankton Medical Clinic, PC, in Yankton, South Dakota, for an umbilical hernia procedure. Doc. 44 ¶ 1; Doc. 47 ¶ 5; Doc. 62 ¶ 5. Prior to the procedure, McPeek had an abdominal block. Doc. 47 ¶ 6; Doc. 62 ¶ 6. Dr. Jesse L. Kampshoff, an outside specialist, performed the procedure. Doc. 44 ¶¶ 2, 3; Doc. 56 ¶¶ 2, 3; Doc. 47 ¶ 7; Doc. 62 ¶ 7. After the procedure, Dr. Kampshoff documented in his operative note that McPeek had tolerated the procedure well. Doc. 47 ¶ 8; Doc. 46-1; Doc. 62 ¶ 8. After McPeek awoke from the anesthesia, he saw Dr. Kampshoff briefly and recalls that Dr. Kampshoff told him that Tramadol was being prescribed for pain. Doc. 44 ¶ 4 (citing Doc. 44-1 at 31, ¶ 4). Defendants dispute this paragraph of McPeek's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, Doc. 44 (hereinafter "McPeek's SOF") because "this conversation has not been verified and is unsupported by medical records." Doc. 56 ¶ 4. Neither the Federal Rules of Civil Procedure nor the District of South Dakota's local civil rules of practice require that a party moving for summary judgment support its statement of undisputed material facts with verified conversations corroborated by entries in the medical records. McPeek's affidavit, Doc. 44-1 at 29–37, constitutes record evidence sufficient to support a motion for summary judgment. See Fed. R. Civ. P. 56(c)(1)(A). Similarly, McPeek's deposition testimony, Doc. 44-1 at 38–152, also constitutes record evidence sufficient to support a motion for summary judgment.

Before leaving Yankton Medical Clinic after surgery, McPeek signed the Umbilical Hernia Discharge Instructions form at 11:46 a.m. on October 12, 2023. Doc. 44 ¶ 6; Doc. 44-1 at 35, ¶ 15. Defendants "dispute" this paragraph, but they did not cite to any record evidence. Doc.

56 ¶ 6. Thus, the Court considers paragraph 6 of McPeek's SOF, Doc. 44, to be undisputed. See, e.g., Flora v. Custer Reg'l Med. Clinic, No. CIV. 06-05031AWB, 2008 WL 4724316, at *3 (D.S.D. Oct. 24, 2008) (stating that a failure to cite to record evidence when disputing a fact may result in the fact being deemed admitted); see also D.S.D. Civ. LR 56.1(B) (requiring that a party opposing a motion for summary judgment "respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record."); Fed. R. Civ. P. 56(e)(2) (stating that the court can consider a fact undisputed when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)").

Paragraph 6 of the discharge instructions states to "[n]otify your doctor if . . . severe pain not relieved by oral medication[.]" Doc. 44 ¶ 9; Doc. 44-1 at 2 ; Doc. 56 ¶ 9. The medications section of the discharge instructions states that "nurses will have pain script . . . otherwise you may take Tylenol/Ibuprofen[.]" Id. Dr. Kampshoff signed a prescription for 20 tablets of Tramadol 50 mg. Doc. 44-1 at 3. Before McPeek's discharge, the DOC medical staff was provided the "Umbilical Hernia Discharge Instructions[.]" Doc. 47 ¶ 9; Doc. 46-2; Doc. 62 ¶ 9.[1]

McPeek contends that after he returned to MDSP, CNP Paul "altered" the Umbilical Hernia Discharge Instructions by adding the language "kite if pain not controlled with APAP + Ibu" and then signed and dated the document on October 13, 2023. Doc. 44 ¶ 26; Doc. 56 ¶ 26. McPeek contends that he did not receive a copy of the Umbilical Hernia Discharge Instructions including the language CNP Paul added until September 2025, when it was produced during the

[1] Defendants' Statement of Material Facts refers to the instructions as "recommended" Umbilical Hernia Discharge Instructions. Doc. 47 ¶ 9. McPeek contends that "recommended" does not appear in the title of the document. Doc. 62 ¶ 9. Because "recommended" does not appear in the title of the document, the Court refers to the instructions as "Umbilical Hernia Discharge Instructions[,]" but the title of the document is not dispositive of the legal question whether DOC medical providers violate an inmate's Eighth Amendment rights because they do not follow written instructions provided by outside providers.

course of discovery. Doc. 44 ¶ 30. In her interrogatory responses, CNP Paul stated that she "ensured that [McPeek] was informed of the approved and implemented discharge instructions and pain control plan and ensured that [McPeek] signed the approved and implemented discharge instructions form." Doc. 44-1 at 16 (emphasis in original omitted). McPeek disputes that he was ever instructed that he need to submit a "kite" to request the Tramadol that Dr. Kampshoff had prescribed. Doc. 44 ¶ 32. The encounter documentation[2] generated when McPeek was seen in the medical unit at MDSP immediately after returning from surgery states:

> Reviewed discharge medication[s] and orders.
> Educated patient on follow up care and to notify health services with questions or concerns.
> Patient verbalized understanding.
> Voices no questions or concerns at this time.

Doc. 47-3; see also Doc. 47 ¶¶ 10, 11.

In their statement of undisputed material facts, Defendants contend that the Umbilical Hernia Discharge Instructions state to "[u]se Tylenol . . . or Ibuprofen per manufacturer's recommendation for discomfort as needed[]" and "leave a blank for a pain medication script." Doc. 47 ¶¶ 12, 13 (first two alterations in original) (citing Doc. 47-2). The Umbilical Hernia Discharge Instructions are part of the record. See Doc. 47-2; see also Doc. 44-1 at 2. Defendants do not accurately characterize the instructions for pain medication. "Nurses will have pain script" is written on the line after Pain RX. Doc. 47-2; Doc. 44-1 at 2; see also Doc. 62 ¶ 13. Further, it is undisputed that Dr. Kampshoff provided the DOC medical staff with a prescription for twenty Tramadol tablets. Doc. 47 ¶ 14; Doc. 62 ¶ 14. A copy of the prescription is in the record. See Doc. 1-1 at 7; Doc. 44-1 at 3.

---

[2] This documentation was signed by a nurse, not CNP Paul. Doc. 47-3 at 1.

After surgery, McPeek was taken back to MDSP and placed in a patient room in the medical unit. Doc. 44-1 at 31, ¶ 6. While waiting to be seen by CNP Paul, McPeek noticed that there was "blood squirting in a pulsating manner" from the surgical site. Id. McPeek notified a nurse, who, in turn, notified CNP Paul. Id. CNP Paul stated that she was going to contact Dr. Kampshoff and then applied more glue and a new dressing. Id. While the dressing was being changed, McPeek informed CNP Paul that he was in a lot of pain and asked if he could take the Tramadol pain medication that Dr. Kampshoff had prescribed. Id. at 31–32, ¶ 7. According to McPeek, CNP Paul stated that she did not think that Dr. Haynes would approve Tramadol. Id. at 32, ¶ 7. After McPeek stated that he had just had surgery, was in a lot of pain, and that denying him pain medication prescribed by an outside provider would violate his Eighth Amendment right to be free from cruel and unusual punishment, McPeek contends that CNP Paul stated that she would get back to McPeek about his request for Tramadol. Id.

CNP Paul contends that when McPeek returned to MDSP after his umbilical hernia surgery, she reviewed the discharge instructions, which she contends were "recommended[.]" Doc. 49 ¶¶ 5, 6. CNP Paul approved the "recommended" discharge instructions that included a lifting restriction and keeping the incision dry and intact. Id. ¶ 6. According to CNP Paul, as McPeek's medical provider at MDSP, she grants final approval for recommended prescriptions from outside specialists. Id. ¶ 3. Thus, CNP Paul granted final approval for the recommended prescriptions from Dr. Kampshoff, ordered Tylenol and Ibuprofen, and instructed McPeek to submit a kite if his pain was not controlled by the Tylenol and Ibuprofen. Id. ¶ 7. CNP Paul contends that her pain control plan was informed by her medical judgment after considering McPeek's procedure, the recommended discharge instructions, and the potential side effects of Tramadol. Id. ¶ 8.

McPeek contends that when he requested Tramadol while in the medical unit having his dressing changed, he was never informed that he needed to submit a kite to request medication. Doc. 44 ¶ 32. CNP Paul, on the other hand, contends that DOC medical staff reviewed with McPeek the discharge instructions and pain control plan she had ordered when McPeek was in the medical unit after returning from his surgery. Doc. 47 ¶¶ 10–12 (citing Docs. 47-2, 47-3). It is undisputed that McPeek did not receive any Tramadol after the hernia surgery on October 12, 2023. Doc. 44 ¶ 43; Doc. 56 ¶ 43.

It is also undisputed that McPeek did not submit a kite requesting Tramadol. Doc. 49 ¶ 12; Doc. 59 ¶ 26; Doc. 48 ¶ 6. McPeek, however, contends that he made CNP Paul, as well as a nurse who is not a named defendant, aware of uncontrolled pain when he visited the medical unit. Specifically, McPeek contends that on October 13, 2023, the day after the surgery, he was in so much pain that he could barely get out of bed. Doc. 44 ¶ 14; Doc. 44-1 at 33, ¶ 9. After observing McPeek's "limited ability to walk and move normally[,]" a correctional officer sent McPeek to the medical unit. Id. When he arrived at the medical unit, McPeek again requested the pain medication that Dr. Kampshoff had prescribed, but his request was denied. Id.

According to McPeek, it was not necessary for him to submit a kite requesting Tramadol because he was being seen in the medical unit every day to have his dressing changed. Doc. 44 ¶ 15; Doc. 44-1 at 105–06. McPeek contends that he was seen daily for at least five days after the surgery on October 12, 2023. Doc. 44 ¶ 15; Doc. 44-1 at 108. Each time he saw CNP Paul, as well a nurse who is not a named defendant. Doc. 44-1 at 109–10. During each visit to the medical unit for a dressing change, McPeek informed CNP Paul and the nurse that he was in a lot of pain, that the Ibuprofen and Tylenol were not helping to alleviate his pain, and requested the pain medication that Dr. Kampshoff had prescribed. Doc. 44 ¶ 34; Doc. 44-1 at 33, 36,

¶¶ 11, 17; Doc. 44-1 at 109–10, 119–20, 122, 126. All his requests were denied. Doc. 44-1 at 108–11, 119–20.

CNP Paul, on the hand, asserts that because McPeek did not submit a kite, Doc. 49 ¶ 12, she was not aware that the post-operative pain control plan she formulated when McPeek returned to MDSP following his surgery which provided for Tramadol "as needed" was not adequately controlling his pain.[3] CNP Paul disputes that McPeek was seen regularly in the medical unit for wound care. According to CNP Paul, McPeek was responsible for caring for his incision. Doc. 59 ¶ 7. Because McPeek's incision was sealed with Dermabond, daily dressing changes were not needed. Id. ¶ 15. If McPeek had been scheduled to be seen daily for wound care, a wound care order would have been created. Id. ¶ 8. There is no wound care order in McPeek's MDSP chart. Id. ¶ 9. Further, CNP Paul follows an established protocol to ensure that each time an offender is seen in the medical unit the visit is documented. Id. ¶¶ 30–32. According to CNP Paul, because none of McPeek's visits to the medical unit for wound care when he reported uncontrolled pain are documented, they did not occur.

## II. Summary Judgment Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of

[3] Defendants' response to McPeek's SOF, Doc. 44, disputes most of the 44 numbered paragraphs. See generally Doc. 56. But Defendants do not, as required by D.S.D. Civ. LR 56.1(B), include "appropriate citations to the record." In this case, however, instead of deeming each disputed paragraph as admitted because Defendants did not include appropriate citations to the record, the Court has considered the record evidence cited in Defendants' Response to Plaintiff's Motion for Summary Judgment, Doc. 55, along with the record evidence cited in Defendants' Statement of Material Facts, Doc. 47, and Defendants' Memorandum in Support of Motion for Summary Judgment, Doc. 46. See Fed. R. Civ. P. 56(c)(3) (providing that the Court "need consider only the cited materials, but . . may consider other materials in the record."). The Court recognizes that there may have been confusion regarding citation to record evidence because the parties filed cross motions for summary judgment, but neither Federal Rule of Civil Procedure 56 nor Local Rule 56.1 set out any exceptions for cases in which the plaintiff and defendants file cross motions for summary judgment.

material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247–48 (emphasis omitted). The Court must view the facts and inferences fairly drawn from them in a light most favorably to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citation omitted); see also Baker v. Silver Oak Senior Living Mgmt. Co., 581 F.3d 684, 687 (8th Cir. 2009). When considering a motion for summary judgment, a judge's function is not "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." Id. at 250.

## III. Analysis and Discussion

McPeek alleges an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants. See generally Doc. 1; Doc. 5 at 8.

### A. Eighth Amendment Deliberate Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### B. Dr. Haynes is Entitled to Summary Judgment

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution[.]" 42 U.S.C. § 1983. Claims based on vicarious liability are not cognizable under 42 U.S.C. § 1983. Marsh v. Phelps Cnty., 902 F.3d 745, 754 (8th Cir. 2018). "Because

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)); Jones v. City of St. Louis, 104 F.4th 1043, 1050 (8th Cir. 2024). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Marsh, 902 F.3d at 754 (quoting Ashcroft, 556 U.S. at 677).

At all relevant times, Dr. Haynes was the Chief Medical Officer for the South Dakota DOC. Doc. 47 ¶ 1; Doc. 62 ¶ 1. Dr. Haynes is based in Pierre, South Dakota, and his duties include reviewing policies, utilization review, developing new medical programs, and provider support. Id. Dr. Haynes was not involved in McPeek's medical treatment after the October 12, 2023, surgery. Doc. 47 ¶ 2; see also Doc. 48 ¶ 3. Dr. Haynes did not speak with anyone at MDSP, including CNP Paul, regarding McPeek's request for the Tramadol that Dr. Kampshoff had prescribed. Doc. 48 ¶ 3. Although McPeek contends that CNP Paul told him that Dr. Haynes would not approve Tramadol, see Doc. 62 ¶ 2, McPeek cites to no evidence demonstrating that CNP Paul did in fact communicate with Dr. Haynes about administering Tramadol to McPeek. According to CNP Paul's affidavit, she listed Tramadol as an "as needed" medication in her post-operative pain control plan. Doc. 49 ¶ 8. Neither of CNP Paul's affidavits states that she communicated with Dr. Haynes about McPeek. See generally Docs. 49, 59. McPeek asserts that "[t]here is no possible way the Chief Medical Officer was not aware [of] or complicit in [McPeek] not receiving his pain medication knowing he just had surgery." Doc. 43 at 11. This conclusory allegation, unsupported by a citation to competent record evidence, is insufficient as a matter of law to create a genuine issue of material fact. A party opposing a properly made and supported motion for summary judgment must cite to particular materials in

the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

McPeek also contends that his October 17, 2023, informal resolution request stating that he should be given the medication immediately was referred to Dr. Haynes. Doc. 62 ¶ 2 (citing Doc. 44-1 at 5). But the record evidence McPeek cites states only that the "issue has been forwarded to the appropriate supervisor for further investigation." Doc. 44-1 at 5. Although Dr. Haynes, the Chief Medical Supervisor, may have been an appropriate supervisor to investigate McPeek's Informal Resolution Request, McPeek points to no record evidence demonstrating that Dr. Haynes was the only appropriate supervisor to investigate McPeek's Informal Resolution Request or that Dr. Haynes was, in fact, aware of and investigated McPeek's Informal Resolution Request. See generally Doc. 62 ¶ 2. Notably, then-Associate Warden Reyes, not Dr. Haynes, signed the official response to McPeek's Informal Resolution Request. Doc. 44-1 at 7.

Because there is no competent record evidence demonstrating that Dr. Haynes was personally involved in McPeek's medical treatment after the October 12, 2023, surgery, Dr. Haynes is entitled to summary judgment.[4] Accordingly, Dr. Haynes' motion for summary judgment, Doc. 45, is granted, and McPeek's motion for summary judgment on his claim against Dr. Haynes, Doc. 42, is denied.

---

[4] McPeek does not allege that Dr. Haynes is liable for failure to train or for failure to supervise CNP Paul or any other DOC officials involved in caring for McPeek after his umbilical hernia surgery. See generally Doc. 1; Doc. 43; Doc. 63; Doc. 67; Doc. 68.

### C. Genuine Issues of Material Facts Preclude Summary Judgment on McPeek's Claims Against CNP Paul

To prevail on his claim against CNP Paul, McPeek must demonstrate that CNP Paul had actual knowledge of his alleged uncontrolled post-operative pain. Whether CNP Paul had actual knowledge of McPeek's post-operative pain is disputed. McPeek contends that he made CNP Paul aware that his pain was uncontrolled by Tylenol and Ibuprofen when he was in the medical unit each day for five days after the surgery for wound care. Doc. 44 ¶¶ 14, 15, 34; Doc. 44-1 at 33, 36 ¶¶ 9, 11, 14; Doc. 44-1 at 105–06, 108–10, 119–20, 122, 126. CNP Paul, on the other hand, contends that because McPeek did not submit a kite, Doc. 49 ¶ 12, she was not aware that the post-operative pain control plan she formulated when McPeek returned to MDSP following his surgery which provided for Tramadol "as needed" was not adequately controlling his pain. In other words, CNP Paul contends that McPeek never made her aware that he needed Tramadol.

CNP Paul disputes that McPeek was seen regularly in the medical unit for wound care. According to CNP Paul, McPeek was responsible for caring for his incision. Doc. 59 ¶ 7. Because McPeek's incision was sealed with Dermabond, daily dressing changes were not needed. Id. ¶ 15. If McPeek had been scheduled to be seen daily for wound care, a wound care order would have been created. Id. ¶ 8; see also Doc. 57 ¶¶ 7–13. There is no wound care order in McPeek's MDSP chart. Doc. 59 ¶ 9. Further, CNP Paul follows an established protocol to ensure that each time an offender is seen in the medical unit the visit is documented. Id. ¶¶ 30–32. According to CNP Paul, because none of McPeek's visits to the medical unit for wound care when he reported uncontrolled pain are documented, they did not occur.

At the summary judgment stage, it is not the Court's role to resolve factual disputes. Anderson, 477 U.S. at 249. Because whether McPeek reported uncontrolled pain to CNP Paul is

disputed, McPeek is not entitled to summary judgment against CNP Paul. McPeek's motion for summary judgment, Doc. 42, is denied.

CNP Paul concedes that there are genuine issues of material fact regarding whether she had knowledge of McPeek's post-procedure uncontrolled pain. See, e.g., Doc. 64 at 9. Nevertheless, CNP Paul contends that she is entitled to summary judgment because even if she knew of McPeek's post-procedure pain, her actions do not rise to the level of deliberate indifference. Id. The Court disagrees. After giving McPeek the benefit of all favorable inferences arising from the record evidence he cites, McPeek has presented evidence that he repeatedly informed CNP Paul that his post-operative pain was uncontrolled by the Tylenol and Ibuprofen that she had ordered and requested additional pain medication. According to McPeek, CNP Paul did not order the pain medication that Dr. Kampshoff had prescribed. Moreover, McPeek has cited to record evidence demonstrating that CNP Paul ignored and failed to take any action in response to McPeek's repeated reports of uncontrolled pain.

CNP Paul argues that her pain control plan was informed by her medical judgment after considering McPeek's procedure, the recommended discharge instructions, and the potential side effects of Tramadol. Doc. 64 at 7. But CNP Paul's affidavit states that she formulated this plan immediately after surgery when McPeek returned to the medical unit at MDSP. Doc. 49 ¶¶ 4–8. Further, the affidavit states that CNP Paul listed Tramadol as a potential "as needed" medication if Tylenol and Ibuprofen did not control McPeek's pain. Id. ¶¶ 7–8. CNP Paul argues that McPeek does not have a constitutional right to a particular course of treatment and that the Eighth Amendment does not preclude prison doctors from exercising their independent judgment. Doc. 64 at 7 (citing Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996)).

After considering CNP Paul's affidavit and the applicable Eighth Circuit authorities, McPeek has not demonstrated that CNP Paul's pain control plan formulated immediately after the surgery when McPeek was in the medical unit was deliberately indifferent based on the information available to her. That CNP Paul, based on her professional judgment, initially attempted to manage McPeek's post-operative pain conservatively does not rise to level of deliberate indifference.

But CNP Paul's motion for summary judgment asks this Court to ignore the record evidence demonstrating that McPeek subsequently reported to CNP Paul multiple times that her pain control plan was not adequately controlling his pain. There is no evidence that CNP Paul assessed McPeek or took any action whatsoever to address McPeek's reported uncontrolled pain. As CNP Paul states, McPeek does not have a constitutional right to a particular course of treatment, but he does have a constitutional right to some treatment and evaluation when he reports that the recommended course of treatment is ineffective and that he is experiencing severe pain. There is no record evidence that this occurred. See Moore v. Jackson, 123 F.3d 1082, 1085–89 (8th Cir. 1997) (per curiam) (finding that the district court had erred in granting summary judgment in favor of defendants when plaintiff presented evidence that defendants were aware that the plaintiff was experiencing significant tooth pain but failed to provide any treatment).

There is no record evidence explaining why CNP Paul, in her professional judgment, deemed it appropriate not to follow Dr. Kampshoff's recommended course of treatment for pain management when the pain control plan she had ordered was not adequately controlling McPeek's pain. Prison medical providers are not deliberately indifferent if they exercise independent professional judgment and elect not to follow the course of treatment prescribed by

an outsider provider. But to overcome a properly supported motion for summary judgment, the prison provider must come forward with competent record evidence explaining how, in her professional judgment, an inmate's medical needs were being met without following the course of treatment prescribed by an outside provider. With respect to McPeek's daily reports of uncontrolled pain beginning the day after the surgery, there is no such evidence in this case. Further, the Court does not agree that CNP Paul's failure to respond to McPeek's repeated complaints of uncontrolled pain is meaningfully distinguishable from the defendants' failure to act in Dadd v. Anoka County., 827 F.3d 749 (8th Cir. 2016). See generally Doc. 46 at 9–10. When McPeek returned to MDSP following his surgery, CNP Paul prescribed Tylenol and Ibuprofen to alleviate McPeek's post-operative pain. Doc. 49 ¶ 7. However, McPeek has presented evidence that he reported that CNP Paul's pain control plan, Tylenol and Ibuprofen, was not controlling his pain and requested the pain medication that his surgeon had prescribed. When McPeek notified CNP Paul of his complaints of uncontrolled pain, according to McPeek, CNP Paul did nothing. That CNP Paul initially provided treatment for McPeek's pain complaints does not mean that CNP Paul cannot be deliberately indifferent for failing to respond after becoming aware that her initial treatment plan was ineffective.

"When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow." Dadd, 827 F.3d at 757; see also Majors v. Baldwin, 456 F. App'x 616, 617 (8th Cir. 2012) (per curiam) (holding that an inmate stated a deliberate indifference claim against defendants whom allegedly had withheld prescription pain medication and failed to provide adequate post-operative treatment). CNP Paul's alleged complete failure to act after repeatedly having been made aware that her initial treatment plan was ineffective is tantamount to the repeated failures by the jail officials in Dadd to provide the

pain medication Dadd's dentist had prescribed. See Leonard v. St. Charles Police Dep't, 59 F.4th 355, 363 (8th Cir. 2023) ("The clearly established principle from Dadd is that a complete failure to treat an extremely painful (or other serious) condition displays a reckless indifference to a serious medical need." (citation omitted)).

CNP Paul contends that even if she had actual knowledge of McPeek's post-procedure pain, McPeek has not demonstrated that his pain was severe or limiting. Doc. 46 at 9–10. According to McPeek's affidavit and deposition testimony, he reported that he was in "a lot of pain" and that Tylenol and Ibuprofen were not helping to alleviate his pain. Doc. 44-1 at 31–32, ¶ 7. McPeek describes the pain as a shooting pain in the center of body and reported that any movement of his legs or arms triggered the pain. Id. at 120. McPeek does not dispute that he was able to walk, but walking caused him pain. Id. at 125–26. For approximately the first week after the surgery, McPeek spent most of his time in bed. Id. His meals were brought to him, and he was on "lay-in." Id. at 125. But because CNP Paul did not contemporaneously evaluate or assess McPeek after the day of the surgery, she is asking this Court to conclude that McPeek's pain complaints were not credible or were exaggerated. See Doc. 55 at 13–14 (summarizing the record evidence describing McPeek's post-operative pain complaints). At the summary judgment stage, this Court cannot make credibility assessments. Rather, the Court must accept McPeek's version of the facts as true and give him the benefit of all favorable inferences.

If CNP Paul had contemporaneously evaluated McPeek and determined that his pain complaints were not credible, were exaggerated, or, in her professional judgment, could be appropriately managed without ordering additional pain medication, including the pain medication that McPeek's surgeon had prescribed, then CNP Paul may be entitled to summary judgment. But there is no such evidence in the record. Instead, the record evidence

demonstrates that CNP Paul completely failed to respond or act in response to McPeek's reports of uncontrolled pain.

McPeek's pain complaints must be considered in the context of his underlying medical condition—umbilical hernia surgery. There is no dispute that CNP Paul was aware of the date and nature of the surgery that McPeek had undergone.[5] Doc. 46-1; Doc. 46-2; Doc. 47 ¶ 7. CNP Paul references one of Dr. Haynes' affidavits describing McPeek's surgery as "low risk[.]" Doc. 55 at 13 (citing Doc. 58 ¶¶ 7–9). However, CNP Paul cites to no record evidence demonstrating that she was aware of how the American College of Surgeons surgical risk calculator assessed the risks associated with umbilical surgery repair. But even assuming that CNP Paul was aware of this information, according to Dr. Haynes' affidavit, the risk calculator assesses potential post-operative complications. Doc. 58 ¶¶ 7–9. Dr. Haynes' affidavit does not state that the risk calculator is related to how painful a surgical procedure may be or that low risk surgeries are not or cannot be associated with severe post-operative pain. See generally id.

To support her contention that there is no genuine issue of material fact that she was deliberately indifferent to McPeek's reports of uncontrolled post-operative pain, CNP Paul argues that "self-reported assertions of pain are insufficient to constitute . . . verifying medical evidence in the absence of corroborating evidence of symptoms." Doc. 46 at 10 (quoting Dantzler v. Baldwin, 133 F.4th 833, 844 (8th Cir. 2025)). CNP Paul's reliance on Dantzler is misplaced. In Dantzler, the Eighth Circuit considered whether the district court had erred by holding that a prison physician was not entitled to qualified immunity for a claim alleging that she had been deliberately indifferent to a prisoner's complaints of knee pain by delaying an MRI and orthopedic referral. Dantzler, 133 F3d at 835. In Dantzler, the defendant physician provided

[5] CNP Paul argues that McPeek "does not provide support to show how his pain would be obvious to a layperson." Doc. 55 at 14 (citation omitted). CNP Paul is not a layperson. Thus, this argument is misplaced.

periodic treatment for the prisoner's complaints of knee pain, but the prisoner alleged that the defendant physician had delayed referral for non-medical reasons. Id. at 836–39. McPeek does not allege that CNP Paul delayed treating his alleged uncontrolled post-operative pain. Rather, McPeek contends that CNP Paul failed to treat his uncontrolled post-operative pain. It is undisputed that McPeek never received the Tramadol prescribed by his surgeon. Doc. 44 ¶ 43; Doc. 56 ¶ 43. Because McPeek's claim is for failing to provide medical treatment and not for delaying medical treatment, Eighth Circuit precedent does not require that he present verifying medical evidence to establish that a delay in treatment had a detrimental effect. But even if the Court were to apply Dantzler by analogy to consider whether McPeek's reports of uncontrolled post-operative pain are sufficiently severe to give rise to a claim for deliberate indifference, McPeek has presented "corroborating evidence of symptoms." Dantzler, 133 F.4th at 844 (internal quotation omitted). See, e.g., Doc. 44 ¶ 14; Doc. 44-1 at 2, 3, 31–32, 120, 125–26.

CNP Paul also argues that even if she was on notice of McPeek's uncontrolled pain complaints, at most she was negligent because she did not administer the prescribed pain medication. Doc. 46 at 11. Based on McPeek's testimony, however, a reasonable jury could conclude that CNP Paul's failure to evaluate, assess, and respond to McPeek's repeated complaints of uncontrolled post-operative pain, including, but not limited to, ordering prescription pain medication constitutes a refusal to provide essential care or intentional maltreatment, which demonstrates deliberate indifference. Redmond v. Kosinski, 999 F.3d 1116, 1120 (8th Cir. 2021); see also Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004) (holding that there was a question of material fact whether defendants were deliberately indifferent to an inmate's serious medical needs when they failed to act in response to complaints of severe tooth pain). Accordingly, because there is a question of material fact whether CNP

Paul was deliberately indifferent based on the record evidence that McPeek has presented, CNP Paul's motion for summary judgment is denied.

## IV. Conclusion

For the reasons discussed above, it is

ORDERED that McPeek's motion for summary judgment, Doc. 42, is denied. It is further

ORDERED that Defendants' motion for summary judgment, Doc. 45, is granted in part and denied in part. Dr. Haynes is entitled to summary judgment, and McPeek's claims against Dr. Haynes in his individual and official capacity are dismissed. Because there are genuine issues of material fact, CNP Paul is not entitled to summary judgment.

DATED September 30, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE